**[Cite as *State v. Stokes*, 2020-Ohio-599.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-3 |
| | : | |
| FREDRICK SCOTT STOKES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 21st day of February, 2020.

. . . . . . . . . . .

SAMUEL ADAM USMANI, Atty. Reg. No. 0097223, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 2541 Shiloh Springs Road, Dayton, Ohio 45426
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Fredrick Scott Stokes pled guilty in the Champaign County Court of Common Pleas to trespass in a habitation, a fourth-degree felony, and violating a protection order, a fifth-degree felony. The trial court imposed maximum sentences of 18 months for the trespass and 12 months for violating the protection order, to be served consecutively, for a total sentence of 30 months in prison. Stokes appeals from his convictions, challenging the trial court's imposition of maximum consecutive sentences. For the following reasons, the trial court's judgment will be affirmed.

### I. Factual and Procedural History

{¶ 2} According to the record, in the fall of 2018, Stokes and his wife were in the process of divorcing. After a domestic violence incident in late September, Stokes's wife obtained a civil protection order (CPO) against Stokes on October 2, 2018. Shortly before 7:30 p.m. on December 27, 2018, Stokes went to the residence where his wife and daughter resided, contrary to the terms of the CPO. Stokes refused to leave when his wife asked him to leave, and she allowed him to enter to avoid escalating the incident. The police were called to the residence, and they found Stokes in the living room speaking with his wife. Stokes told an officer that he knew that he was not allowed on the property per the CPO, but he stated that he had come to discuss various financial issues and to give the dogs a bone. The police officers arrested Stokes.

{¶ 3} On January 7, 2019, a grand jury indicted Stokes on two counts of violating a protection order as fifth-degree felonies (Counts 1 and 2), two counts of violating a protection order as third-degree felonies (Counts 3 and 4), and one count of trespass in a habitation, a fourth-degree felony (Count 5). On February 22, 2019, Stokes pled guilty to Counts 1 and 5. In exchange for the plea, the parties further agreed to dismiss the

remaining charges and to recommend a presentence investigation report, which the State "agree[d] to review." The State further agreed that, if Stokes had no further criminal history than was already known, the State would recommend non-residential community control. If, on the other hand, the PSI revealed an additional criminal record or if Stokes engaged in further criminal conduct or violated the conditions of his bond, the State would not be bound to that recommendation. Stokes further "acknowledge[d] and stipulate[d] that the offenses in Count One and Count Five [were] not allied offenses of similar import and do not merge."

{¶ 4} At sentencing, the trial court imposed maximum sentences of 12 months and 18 months for Counts One and Five, respectively, to be served consecutively. Before doing so, the trial court reviewed the PSI and spoke with the attorneys, the victim advocate, and Stokes about the offenses and Stokes's criminal history. The court further ordered that Stokes pay a fine of $250 for each offense, legal fees and expenses, and court costs. The trial court set forth its reasoning for imposing maximum consecutive sentences both orally at the sentencing hearing and in its written judgment entry.

{¶ 5} Stokes appeals from his convictions. In his sole assignment of error, he claims that "the record does not support the imposition of consecutive maximum sentences, the trial court does not support the imposition of consecutive maximum sentences, the trial court did not make the specific findings necessary to support the imposition of maximum consecutive sentences, and the sentence is clearly and convincingly contrary to law."

## II. Review of Stokes's Sentences

{¶ 1} In reviewing felony sentences, appellate courts must apply the standard of

review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 2} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 3} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C.

2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 4} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record, if any.

{¶ 5} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 6} Although the trial court was not required to articulate its reasons for imposing maximum sentences, the trial court in this case made extensive findings prior to imposing the maximum 12-month and 18-month sentences. In considering the factors set forth in R.C. 2929.12, the trial court found:

- Defendant's criminal history consists of eighteen documented convictions involving separate incidents for two prior Violating a Protection Order convictions, six OVI convictions, seven disorderly conduct convictions, and one prior Domestic Violence conviction and six probation violations.

- At the time of the offense[s] in the case at bar, the Defendant was on probation for four separate cases to the Champaign County Municipal Court for convictions involving OVI, Domestic Violence, Violating a

Protection Order and Violating a Protection Order.

- Each of the probationary convictions had required the Defendant to obtain a number of different treatment services, including in-patient hospitalization, substance abuse treatment and mental health treatment[.]

- Defendant has not responded favorably to sanctions previously imposed.

- Defendant shows no genuine remorse for the offenses and continues to shift blame to the victim for Defendant's criminal conduct.

- Defendant had previously threatened to kill the victim during the Domestic Violence incident.

- Defendant's relationship with the victim facilitated the offenses. *R.C. 2921.12(B)(6)* [Italics sic.]

- Defendant traveled to the victim's house and the victim did absolutely nothing to facilitate the incident.

- In committing the offenses in the case at bar, Defendant not only violated the Court orders of the Champaign County Domestic Relations Court, but also the orders of the Champaign County Municipal Court.

- Defendant committed the offenses in the case at bar while he was undergoing treatment.

- After review of Defendant's criminal history and statements at sentencing, the Court concludes that the Defendant has not demonstrated that he would comply with the community control orders of the Champaign County Common Pleas Court.

- In committing the offenses in the case at bar, the Defendant did not commit

acts of violence against the victim.

- Defendant has no prior juvenile adjudications.

- Up to the point in time where the Defendant has had to address the termination of his marriage in the last three months, the Defendant has led a law-abiding life since April 2014.

- Defendant has suffered complications from a prior traffic incident that may compromise his cognitive ability to control his behavioral patterns.

The trial court found that it had the discretion to impose a prison term upon Stokes for felonies of the fourth and fifth degree, because he had committed the offenses while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance. *See* former R.C. 2929.13(B)(1)(b)(xi).

{¶ 7} On appeal, Stokes acknowledges that the 18-month and 12-month sentences were within the statutory ranges for his fourth- and fifth-degree felonies. He claims, however, that the trial court failed to take into consideration his lack of a felony record, the non-violent nature of the offenses, that the offenses were not more serious than others, the State's recommendation of community control, and the victim's wishes, which were that Stokes receive help with his substance abuse and anger issues.

{¶ 8} The record reflects that the trial court complied with its obligation to consider R.C. 2929.11 and R.C. 2929.12. Contrary to Stokes's assertion, the trial court acknowledged in its findings that Stokes did not commit any acts of violence against his wife while committing the charged offenses, and it is apparent that the court carefully reviewed Stokes's criminal record. Although the State had recommended non-residential community control, the trial court reasonably concluded that Stokes was not

amenable to community control, as demonstrated by Stokes's repeated violations of orders from the domestic relations court and municipal court and his prior probation violations; Stokes had twice previously violated the CPO related to his wife.

{¶ 9} Moreover, the trial court indicated that it had reviewed the victim's written impact statement and, at the court's request, the court spoke with the victim advocate at the sentencing hearing to see if Stokes's wife's opinion had changed after her written statement was submitted. Although Stokes's wife primarily expressed concern that Stokes receive treatment for his substance abuse, mental health, and anger issues, the court could have reasonably concluded that incapacitation was a necessary component of Stokes's sentence, both to punish Stokes and for Stokes's wife's protection. Upon review of the record, including the PSI and the transcript of the sentencing hearing, we cannot conclude that the trial court's individual sentences were contrary to law or were clearly and convincingly unsupported by the record.

{¶ 10} As to the court's imposition of consecutive sentences, the trial court made the required statutory findings. The court found, both orally and in its judgment entry, that consecutive sentences were necessary to protect the public or to punish Stokes and that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger that he posed to the public. Lastly, the court found that Stokes's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him.

{¶ 11} In asserting that the court's consecutive sentences findings were clearly and convincingly unsupported by the record, Stokes emphasizes his lack of a felony record, the lack of violence during the commission of the offenses, and that his wife admitted him

into her home (i.e., he did not force his way in). However, the record indicates that Stokes had threatened to kill his wife during a prior domestic violence incident in September 2018 (which led to the October 2, 2018 protection order), and that he had twice violated the protection order in November 2018. The presentence investigation report further stated that Stokes appeared to shift the blame to his wife. After speaking with Stokes, the court similarly concluded that Stokes did not appear to "appreciate the seriousness of the order to stay away" and that he "still [didn't] understand that [he was] not allowed to have contact with her." (Sentencing Tr. at 17-18.)

{¶ 12} The record further indicates -- and the trial court emphasized -- that Stokes's criminal record demonstrated an ongoing "inability to control [him]self." The court noted Stokes's seven prior convictions for disorderly conduct, six prior convictions for OVI, and one prior conviction for domestic violence. The court also noted that those convictions, coupled with orders to receive substance abuse and mental health treatment, "tells me that this is a powder keg that is waiting to explode." (*Id.* at 19.) Upon review of the record, we cannot conclude that the trial court's consecutive sentence findings were clearly and convincingly unsupported by the record.

{¶ 13} Stokes's assignment of error is overruled.

### III. Conclusion

{¶ 14} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Samuel Adam Usmani
Christopher A. Deal
Hon. Nick A. Selvaggio